LYMAN ROBINSON, Claimant, *v.* STATE OF NEW YORK.

Claim No. 14,875.

(State of New York, Court of Claims, January, 1921.)

*Damages — overflow of lands by reason of cloudburst — damages to crops resulting from negligence of state in operation of Barge canal, in addition to damage occurring from natural causes — claim dismissed.*

CLAIM for damages to crops growing on a farm due to the negligence of the state.

Ernest F. Fox (Wilford T. Purchase, of counsel), for claimant.

John H. Clogston, deputy attorney-general, for state of New York.

CUNNINGHAM, J. In the year 1916, and for many years previously, the claimant worked the farm of his mother-in-law, Hattie Vanderbilt, '' on shares,'' for two-thirds of the crops produced. He seeks to recover damages to crops growing on the farm in June, 1916, by flood alleged to be due to the negligence of the state, in the construction, maintenance and operation of the Barge canal.

The parties stipulated on the trial that all of the evidence in the claim of *George Bauer* v. *State of New York*, No. 14577, previously tried and determined in this court, be received in this case, which was done. The premises involved here are situated substantially the same as the land concerned in the *Bauer* claim. Our opinion in *Bauer* v. *State of New York*, 106 Misc. Rep. 1, includes an ample statement of the facts. Such additional evidence as was adduced on the trial of this claim will be referred to subsequently.

The principles of law applicable to the determination of the state's liability for the injury which occurred were fully discussed and expressed in our opinion in the *Bauer* case. We are convinced that these principles are firmly established and entirely sound. It is needless to repeat them here in detail. They leave for us in this case the determination merely of the issues of fact. The recent decision of this court in *Holland-Dale Garden Company, Inc.*, v. *State of New York*, 113 Misc. Rep. 219, is not to be misconstrued, because of the omission from it of a complete restatement of the principles to which we have referred, or by reason of the phraseology used. This court adheres fully to the rule stated in the *Bauer*

opinion and in the cases there cited. There has been no tergiversation on our part in this respect.

It is well to state briefly the reasons which actuate us in reaching the result to which we come. This trial marked an effort on the part of counsel to supply evidence wanting in the *Bauer* case. Other claims growing out of the same transaction await trial and determination.

Two questions of fact only are to be solved:

(1) Did the negligence of the state result in any damage to the crops over, above and in addition to that which would have resulted from natural causes alone, in the absence of the intervening agency of the state; and

(2) What was the amount or extent of such damage, if any, resulting from the state's negligence, in addition to that which would have occurred from natural causes.

In the main, the new evidence presented by the claimant on this trial, bearing on the issue of liability, was to the effect that natural flood conditions in Mud creek, above the point of its influx to the Barge canal were worse and the water higher in May, 1916, than in June of the same year. That of the state, in effect, was that gauge readings taken at the Lyons lock of the Barge canal at any specific times will show with substantial accuracy the water elevation at the same times, in Mud creek at or near the premises here involved, due to the fact that Mud creek and the Barge canal reunite at the Lyons lock, and the water at that point in the canal and in Mud creek, near the claimant's premises, constitutes a pool standing at both points at a given time at substantially the same level. The state then established the gauge readings taken at the Lyons lock in the floods of the months of May and June, 1916, which indicated the maximum water elevation in the May flood to have exceeded that of the June flood, by

seven-tenths of a foot. Such, therefore, is the state of the proof.

It is clear in this case, as it was in the *Bauer* case, " that there would have been a flood of greater or less magnitude, affecting the claimant's premises, on June 18, 1916, irrespective of the state's fault." There is no doubt that the lowlands in that vicinity always have been flooded in spring-time, by the natural rise of Mud creek, that the land involved in this claim is lowland, and that the rain storm and natural flood conditions in Mud creek above the Barge canal, in June, 1916, were unprecedented, with the exception of those which obtained in May of the same year. It follows that these premises would have been inundated in June, 1916, to some degree and for some duration, quite irrespective of any break in the canal bank.

It is beyond cavil that these lands were seriously and extensively flooded in May, 1916. This is established by the claimant's admission that six or six and one-half acres thereof were flooded at that time, his testimony that the road near the Cronise bridge, which is two feet higher than the land, was covered with water and by the specific evidence on the part of the state that the water elevation at this property in the May flood was seven-tenths of a foot higher than in the June flood. If it be the fact that in June the natural conditions in Mud creek were worse than in May, it is obvious that the state's negligence did not augment the flood at the claimant's premises, because the water elevation there was seven-tenths of a foot lower in June than in May. If the natural discharge in June was but slightly less excessive than in May, it is clear that the state's remissness produced a negligible effect, if any, because the difference in elevation of seven-tenths of a foot in Mud creek represents conditions at the claimant's premises substantially the same on both occasions. If natural conditions were

practically the same in May and June, we conclude, likewise, that the state's negligence did not damage the crops to any appreciable extent, because, as we have stated, the water elevations at the claimant's land being practically identical on both occasions, were in accord with the natural conditions existing.

Although the testimony is practically balanced on this issue, if there be any preponderance, it is slightly to the effect that the June flood and water elevation above the Barge canal were higher than that in May. The witnesses who testified on this point were all apparently credible and about equal in number. Our own conclusion is that natural flood conditions in Mud creek were substantially identical on both occasions, and that the flood conditions at the premises in question were substantially the same at both times. If we are correct, then it is obvious that the state's negligence did not increase the injury, and it follows that the state is not liable under the principles of law, to which we previously have adverted, for any part of the loss.

In examining the facts in this case, it must not be forgotten that all of the water which emanated from the canal at the break found its only outlet to the claimant's premises through the culvert in the West Shore railroad embankment, which, of course, deterred it greatly and permitted only its gradual escape.

We have not discussed the claimant's status here arising from the fact that his only relationship to the loss is based upon the fact that he cultivated the land on shares. It seems to us evident that this would be important, were it not for the conclusion we have reached. Counsel did not discuss the proposition and we regard it as subordinate to the question of liability. The claim must be dismissed.

ACKERSON, P. J., concurs.

Claim dismissed.